BIGELOW *v.* RAYNOR.

SPECIFIC PERFORMANCE—LAND CONTRACT—ASSIGNMENT.

 A decree for the specific performance of a land contract was properly granted against the vendor's assignee, who, after receiving several payments upon the purchase price, refused a deed upon tender of the balance in accordance with the terms of the contract.

Appeal from Gratiot; Daboll, J. Submitted April 24, 1900. Decided May 18, 1900.

Bill by Samuel E. Bigelow against Aaron J. Raynor for the specific performance of a land contract. From a decree for complainant, defendant appeals. Affirmed.

*George P. Stone,* for complainant.

*John T. Mathews,* for defendant.

LONG, J. The bill in this case is filed for the purpose of obtaining the specific performance of an executory land contract. On the 24th day of February, 1887, the defendant held or claimed to own various parcels of land within the county of Gratiot, and among which was the W. ½ of the N. E. ¼ of section 18, township 10 N., range 4 W., in said county, the south 40 of which is the land in controversy. On this day the defendant conveyed the land in question, together with other lands, to Jones & Porter, of Lansing; taking back a mortgage upon the lands so conveyed for the sum of $11,822. Contemporaneously with the execution of these conveyances, there was executed between the parties a written agreement whereby it was agreed that, if Jones & Porter made sales of parcels of these lands from time to time upon contracts, such contracts should be turned over by Jones & Porter to the defendant, and that he should indorse the amounts of such

contracts upon the mortgage in question, but that Jones & Porter should guarantee such mortgages or contracts so turned over to defendant. Some time later Jones & Porter sold the W. ½ of the N. E. ¼ of section 18 aforesaid, by executory land contract, to one Robert W. Force, and this contract was assigned and turned over to the defendant under the terms of the agreement aforesaid. Afterwards Robert W. Force sold and assigned this contract to one Thomas, and Thomas subsequently sold and assigned the same to the complainant and one Alvin Day; and they took possession of the land. Afterwards they divided the land, the complainant taking the south 40 and Day the north 40; Day giving the complainant $75 for the privilege of taking his choice of the 40's. After making this division, and on June 1, 1893, the complainant and Day went to Lansing to see Jones & Porter for the purpose of obtaining separate contracts for the land, and the contract in question was then made by Jones & Porter to complainant.

At the time of the assignment of the Force contract to defendant, the same was indorsed upon his mortgage contract with Jones & Porter. On October 25, 1893, the defendant was informed that the Force contract had been surrendered, and that new contracts had been executed by Jones & Porter to the complainant and Day; and on this date defendant wrote complainant, saying that, unless a certain payment of $100 was made at once, he should declare the contract forfeited and take possession of the land. About a year after the execution of the contracts to complainant and Day, there arose some disagreement or misunderstanding between Jones & Porter, the defendant, the complainant, and Day respecting the amounts complainant and Day had paid upon the contracts; and complainant and Day went to Lansing for the purpose of adjusting and settling the matter. After their arrival, the defendant was sent for, and he came to Lansing, and there was an interview between all the parties. At this interview all the disputed payments

were amicably adjusted, and the payments previously made to Jones & Porter were properly indorsed upon the contract; and for the purpose of evidencing the fact that these disputed payments should be applied upon the contract of the complainant, as against the defendant, the defendant subscribed his name to the indorsements upon the complainant's contract. Of these payments so indorsed and subscribed, the $35 was paid to Jones & Porter June 1, 1893, and the other payments were paid by the complainant to defendant personally.

Under date of June 8, 1894, the contract in question was assigned by Jones & Porter to the defendant for a consideration of $177.58. On the same date the defendant indorsed upon his mortgage contract with Jones & Porter the sum of $177.58, as being the "Samuel E. Bigelow contract." On September 10, 1895, the defendant acknowledged the receipt from the complainant of $12.43 to apply upon interest upon the contract, and upon February 9, 1897, $12.16 was also paid. On November 8, 1897, the complainant wrote the defendant with reference to paying up the contract and taking a deed. Defendant on November 22d replied to this, saying that he could arrange it all right; that he thought that Jones and Porter's heirs would give a deed, and to let him know when he was ready to pay up, and he would endeavor to get the deed. Pursuant to this correspondence, and for the purpose of closing up the contract, the defendant on November 26, 1897, procured from Nelson B. Jones and wife and the heirs of James B. Porter, deceased, who was of the firm of Jones & Porter, a conveyance of the land in question to the complainant.

Afterwards, and on December 14, 1897, the defendant, as guardian of certain minors, executed and prepared for delivery a quitclaim deed of the premises in question to the complainant, purporting to convey certain tax-title interests which the grantor therein had in the premises by reason of the unpaid taxes of 1888, 1889, 1890, and 1891. Afterwards, and in February, 1898, the defendant being

notified that the complainant desired to pay up his contract and take a deed, the defendant deposited these two conveyances with one Waterbury, who was defendant's agent at Ithaca, Mich., and instructed Waterbury to demand of complainant, as a condition of their delivery, the payment of, not only the amount of principal and interest due upon the contract, but the further sum of $70, which the defendant claimed as his tax-title interest in the premises,—in all, the sum of $256.35; there being due on the contract at that time the sum of $186.35. The complainant refused to pay the further sum of $70 demanded, and then and there tendered to defendant the sum of $188.50 as payment in full of the principal and interest due upon the contract; and, such tender being refused, the complainant notified the defendant that he would place such money in the Ithaca Savings Bank, in readiness to be paid to defendant upon delivery of the deeds, and the complainant deposited the money accordingly.

Complainant's contract provides that he should pay the taxes of 1892 and the taxes of subsequent years, and that, upon the payment of such taxes and the purchase price of $212.50, he should receive "a good and sufficient deed, thereby conveying to the party of the second part a good and unincumbered title in fee simple." At the time of the interview between all the interested parties at Lansing in June, 1894, and while all were present, Day asked the defendant: "Who gives us this title?" Defendant replied: "We do. If you have the money, I will give you a good, clear warranty deed." Then complainant said: "I am ignorant,—cannot read or write; and while you fellows are right here, together, I want to ask you a question: How does it come that Mr. Raynor has paid them back taxes in his name as guardian?"—to which Porter replied, "He paid them for us, and Raynor never had those," to which defendant assented. Defendant does not deny this conversation respecting the tax titles. The complainant paid all the taxes assessed against the premises subsequent to 1891. At the time of the execution of

the contract in question, complainant took possession of the premises, and has occupied them since as his homestead. He has made valuable improvements upon them, and they are now worth $1,000.

There is no allegation in defendant's answer, and no proof in the case, that he ever had any valid tax titles upon the land in question. All the testimony upon this point is that of defendant, who says that maybe he had tax titles, —he did not know,—and that he took deeds for taxes he paid.

Upon these facts, the court below entered a decree in favor of complainant. From this decree, defendant appeals.

We think the court was not in error in so entering the decree. It is unnecessary to discuss the case. The facts warrant the result reached by the court below. The decree must be affirmed, with costs.

The other Justices concurred.